Argued and submitted February 25, reversed August 4, 2004

# STATE OF OREGON,
*Respondent,*

*v.*

# JAMES HAROLD NUZMAN,
*Appellant.*

C941149CR, C941150CR, C941151CR;
A120133 (Control), A120145, A120419
(Cases Consolidated)

95 P3d 252

Tammy W. Sun, Deputy Public Defender, argued the cause for appellant. With her on the brief were Peter Ozanne, Executive Director, and Peter Gartlan, Chief Defender.

Laura S. Anderson, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Armstrong and Brewer,* Judges.

LANDAU, P. J.

Armstrong, J., dissenting.

---

* Brewer, J., *vice* Leeson, J. pro tempore.

**LANDAU, P. J.**

Defendant appeals a judgment of conviction for three counts of felony criminal nonsupport, ORS 163.555. He argues that the state did not prove that he failed to pay child support "without lawful excuse," as the law requires. We agree and reverse.

The facts are not in dispute. In 1980, defendant and the child's mother divorced. The dissolution judgment did not order the payment of any child support for the sole minor child of the marriage. In 1985, the child's mother obtained an order requiring defendant to pay $140 per month in child support.

At the time of entry of the child support order, defendant was capable of gainful employment. He had a high school education and previously had found employment in floor covering, bartending, and sandblasting. Over the course of the following 17 years, however, the mother received a total of $250 as a result of wage garnishments in 1988 and 1989. Those payments stopped suddenly in 1989. In 1994, the state charged defendant with three counts of felony criminal nonsupport, one count each for the periods February 11 to December 31, 1992; February 11 to December 31, 1993; and February 11 to June 30, 1994.

At trial, the state elicited testimony from the mother that she had received no child support payments from defendant from February 11, 1992 through June 30, 1994. She also testified that she had not had any contact with defendant since 1984, when she spoke to him on the telephone. She said that the last time she actually saw him was nearly 20 years ago, in 1983. She also testified that she had no knowledge of his whereabouts during that time and that she knew nothing about his health or ability to find work.

The state also elicited testimony from a Washington County child support specialist, Smith. Smith testified that the county has a "policy to look for missing obligors in * * * the law enforcement data system to see if they have been convicted of [any] crimes." She also testified that, if an obligor is on state assistance, the county has a cooperative agreement

with other states' agencies to "share information about non-custodial parents who owe child support who are on state assistance[.]"[1] She testified that part of her job is to conduct such inquiries, that is, to determine a child support obligor's criminal record and to ask for information from other states' agencies about whether an obligor was on state assistance. She did not testify regarding the extent to which she made such inquiries about defendant, however. She testified only that the file on defendant contained no indication that defendant was incarcerated or on public assistance during the relevant period.

On cross-examination, Smith confirmed that nothing in the file indicated that a criminal history check actually had been performed and that, likewise, nothing in the file indicated that any agencies even had been asked to report whether defendant was on public assistance:

"Q [by defendant's counsel]: Now you mentioned criminal convictions, you mentioned support, what you really mean is that there is nothing in your file to reflect one way or another whether [defendant] was convicted of a crime?

"A: Right.

"Q: There's no reference to any search for that information?

"A: We don't keep them because the files get too thick.

"Q: So the answer—

"A: We don't keep every criminal history in the case unless there is something that—something showed up.

"Q: So the answer is yes, there is nothing in the file to indicate that a criminal history was run?

"A: Correct.

"Q: And there's nothing in the file to indicate any notation from another jurisdiction that [defendant] was on public assistance?

"A: Correct.

---

[1] It is not clear which other states are parties to the agreement. The only agreement specifically mentioned involves five western states.

"Q: And it—also there is nothing in the file to indicate that any specific requests * * * or inquiries were made about that subject?

"A: Correct.

"Q: In other words, there's just nothing about those issues in your file?

"A: Correct."

The state then rested, and defendant moved for a judgment of acquittal. Defendant argued that the state had failed to prove that he had neglected to pay child support "without lawful excuse," as required by ORS 163.555. The state argued that the circumstances permitted an inference to that effect. The trial court agreed with the state and denied the motion. Defendant then rested without offering any evidence, and the trial court found defendant guilty on all three counts.

On appeal, defendant argues that the trial court erred in denying his motion for a judgment of acquittal. He argues that there is a complete absence of evidence that he failed to pay child support "without lawful excuse." The state argues that the circumstantial evidence in the record permits an inference that defendant lacked a lawful excuse for his failure to pay. According to the state, that circumstantial evidence shows that defendant "had been capable of working, and must have been working to support himself, as he had not been incarcerated or on public assistance."

ORS 163.555(1) provides:

"A person commits the crime of criminal nonsupport if, being the parent, lawful guardian or other person lawfully charged with the support of a child under 18 years of age, born in or out of wedlock, the person refuses or neglects without lawful excuse to provide support for such child."

In a prosecution under ORS 163.555(1), the state must prove that a defendant acted "without lawful excuse." *State v. Timmons*, 75 Or App 678, 681, 706 P2d 1018, *rev den*, 300 Or 451 (1985). A "lawful excuse" commonly refers to "some condition, not of the defendant's own making, which prevents the defendant from being able to provide support." *Id*. The state may satisfy that burden by showing:

"(1) there was a court mandate that defendant pay child support, (2) he had an ability to generate an income, and that, in fact, he had earned wages during the time period in question and (3) he had made no payment in any amount towards his child support obligation."

*Id.* at 682.

In this case, it is undisputed that there was a court mandate that defendant pay child support and that he made no payments during the relevant period. What is in dispute is whether the state offered any evidence that defendant's non-payment was "without lawful excuse." The state argues that the fact that he was not incarcerated and was not on public assistance permits the inference that defendant was able to generate an income and, in fact, earned wages from February 11, 1992 to June 30, 1994.[2]

■   Even assuming for the sake of argument that such evidence could permit the inference that the state suggests, the problem remains that there is no such evidence in this record. As we have noted, the record does not show that, in fact, defendant was not incarcerated. Nor does it show that, in fact, defendant was not on public assistance. Instead, the record shows that defendant's child support file, maintained by the state, simply does not say anything one way or the other about such matters. As the state's witness explained on cross-examination, nothing in the file suggests that any criminal history search or public assistance verification had been requested. There are, in other words, no facts from which the inference that the state suggests may be drawn. There is, therefore, a complete absence of evidence that defendant neglected or refused to pay child support "without lawful excuse." The trial court therefore erred in denying defendant's motion for judgment of acquittal.

---

[2] The dissent takes us to task for mischaracterizing the state's argument. 194 Or App at 358 (Armstrong, J., dissenting). The dissent is mistaken. We have taken the state at its own terms, which may be found in its brief:

"The circumstantial evidence in this record—in the light most favorable to the state—shows that defendant: (1) had been required to pay child support, (2) *that he had been capable of working, and must have been working to support himself, as he had not been incarcerated or on public assistance*, and (3) defendant made no support payments between 1992 and 1994."

(Emphasis added.)

The dissent contends that the trial court correctly denied defendant's motion. According to the dissent, although it is true that defendant's child support enforcement file contained no information one way or the other about his actual criminal history or state assistance status, that information may be *presumed* from the fact that the county ordinarily includes such information in the file if it exists. Thus, the dissent invokes an evidentiary presumption to overcome a witness's own contrary testimony. In short, that is not how presumptions work. Moreover, the dissent does not explain—and we do not understand, at least on this record—how the state can satisfy its burden to prove an element in a criminal case beyond a reasonable doubt by relying on a presumption. *See, e.g., State v. Rainey*, 298 Or 459, 466-67, 693 P2d 635 (1985) (jury is permitted to apply presumption to establish an element if, among other things, "the inferred fact follows beyond a reasonable doubt from the underlying fact"). Even assuming for the sake of the argument that the state established that defendant was not incarcerated and was not on public assistance, it is not at all clear to us how those two facts reasonably may be regarded as having established beyond a reasonable doubt the entirely different proposition that defendant was capable of working and, in fact, worked during the relevant time.

The dissent insists that further evidence that defendant was capable of working and, in fact, worked from 1992 to 1994 was supplied by the mother, who testified that "defendant was qualified to work in several different trades." 194 Or App at 359 (Armstrong, J., dissenting). What the mother actually said, however, was that defendant was qualified to work in such trades *ten years earlier* and that, since 1983, she had not seen him and knew nothing about his employment status during the relevant time.

The dissent also notes that the mother testified that, "to the best of her knowledge, during the relevant time period of 1992 to 1994, defendant was not imprisoned, incapacitated, involuntarily committed, or in a drug or alcohol treatment program." *Id.* Again, what the mother actually said was that she had no knowledge about those facts one way or the other. Testimony that a witness has no knowledge of a fact cannot serve as evidence of the existence or nonexistence of

the fact. *See, e.g., Napier v. Southern Pacific Co.*, 218 Or 371, 380, 345 P2d 400 (1959) ("The testimony of a witness who gave negative testimony because he did not observe * * * would amount to nothing." (Internal quotation marks omitted.)).

Reversed.

**ARMSTRONG, J.**, dissenting.

The majority holds that the trial court erred in denying defendant's motion for a judgment of acquittal on charges of criminal nonsupport, ORS 163.555, because there are no facts from which the inference can be drawn that defendant neglected or refused to pay child support "without lawful excuse." 194 Or App at 356. I disagree with the majority's holding for a number of reasons and therefore dissent.

In the first place, I disagree with the majority's characterization of the state's argument on appeal. Contrary to the majority's assumption, the state does not rely exclusively on the argument that evidence of defendant's nonincarceration or nondependence on public assistance establishes that he acted without lawful excuse. Rather, the state contends that that evidence is among the evidence that supports an inference that defendant acted without lawful excuse in failing to pay child support. And even if the majority is correct that the state's argument focuses solely on the evidence regarding incarceration and public assistance, our task on review is to determine whether the record, viewed in the light most favorable to the state, is insufficient to sustain defendant's conviction. *State v. King*, 307 Or 332, 339, 768 P2d 391 (1989). That task necessarily requires us to consider all of the evidence in the record to determine whether the trial court erred in denying defendant's motion for a judgment of acquittal.

Further, I disagree with the majority's conclusion as to what the state's evidence shows. The majority faults the state for failing to present evidence that it had conducted a criminal history search and public assistance verification for defendant. It reasons that the state's evidence amounts to *an*

*absence* of information about defendant's possible incarceration or dependence on public assistance. I disagree with that analysis.

A child support specialist for Washington County testified about the contents of the Washington County District Attorney's child support file on defendant. She testified that four times a year her agency reviews child support files and conducts "computer trolls"—searches of various databases—for information on obligors, including a search of death records and law enforcement data systems. She testified that Washington County has a policy of looking for missing obligors in law enforcement data systems and has agreements with other states to exchange information about noncustodial parents who owe child support and are on state assistance. She testified that her office keeps a criminal history record in the file of an obligor *only if* there is in fact a criminal history, and that there is no information in defendant's file indicating that, during the relevant time, defendant was incarcerated or on public assistance or unable to pay his child support obligation.

We are required to assume that Washington County followed its ordinary business practice of conducting quarterly searches of law enforcement databases in search of information about defendant and exchanging information with other states concerning public assistance, and that the absence of information in the file means that Washington County found no information indicating that defendant was incarcerated or on public assistance during the relevant time. OEC 311(1)(m). Viewing the evidence in the light most favorable to the state, the absence of that information permits an inference that defendant was not incarcerated or on public assistance.

In any event, there is other evidence that supports the trial court's finding that defendant acted "without lawful excuse." Defendant's ex-wife testified that defendant was qualified to work in several different trades and that he made child support payments in 1988 and 1989. She testified that, to the best of her knowledge, during the relevant time period

of 1992 to 1994, defendant was not imprisoned, incapacitated, involuntarily committed, or in a drug or alcohol treatment program. There is circumstantial evidence from which it could be found that defendant moved frequently and that he was attempting to avoid his child support obligation. I would conclude that the evidence, viewed in the light most favorable to the state, supports the inference that defendant was capable of working during the relevant time, that he earned money during that time, and that he had no lawful excuse for failing to pay child support. Accordingly, I would affirm defendant's conviction.